**James M. CRONIN, Plaintiff–Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 587, Docket 94–7419.

United States Court of Appeals, Second Circuit.

Argued Nov. 10, 1994.

Decided Jan. 25, 1995.

Lawrence H. Dickson, New Britain, CT (James M. Cronin, filed a brief pro se), argued orally for plaintiff-appellant.

Albert Zakarian, Hartford, CT (Shane T. Muñoz, Day, Berry & Howard, on the brief), for defendant-appellee.

Before: FEINBERG, KEARSE, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff James M. Cronin appeals from a final judgment of the United States District Court for the District of Connecticut, Alan H. Nevas, *Judge,* dismissing his complaint against his former employer, defendant Aetna Life Insurance Company ("Aetna"), alleging termination of his employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (1988) ("ADEA"), and various state-law claims. The district court granted summary judgment dismissing the ADEA claim on the grounds that (1) Cronin had failed to establish a prima facie case because he produced no evidence that his discharge occurred in circumstances giving rise to an inference of age discrimination, and (2) in any event, he failed to raise any triable issue as to whether the legitimate nondiscriminatory reason articulated by Aetna for his discharge, *i.e.,* that it was part of a reorganization of its operations and reduction in its workforce, was merely a pretext for discrimination. The court declined to exercise supplemental jurisdiction over Cronin's state-law claims. On appeal, Cronin contends that summary judgment dismissing the ADEA claim was inappropriate because there were genuine issues of material fact to be tried. We agree, and we therefore vacate the judgment and remand for further proceedings.

## I. BACKGROUND

The basic sequence of events does not appear to be in dispute. Until early 1990, Cronin had been employed by Aetna for some 33 years in various managerial positions. He was consistently given good performance ratings and was awarded a merit bonus each time he was eligible. In 1989, Cronin, then age 56, worked in Aetna's Personal Financial Security Division ("PFSD"), where he was Administrator of Strategic Automation Planning for the Northeast Region.

In December 1989, Aetna announced a reorganization of PFSD that was to eliminate 71 jobs, including Cronin's. Aetna represented that it would attempt to find new positions for employees displaced by the reorganization. These attempts used a two-step procedure. After reviewing prior performance evaluations and "Competency Assessment Forms" summarizing the skills of the employees whose PFSD jobs were eliminated, the Aetna Human Resources Department ("HRD") selected, or "surfaced," a pool of several candidates for each available position. Each pool of candidates was considered by the Aetna manager responsible for supervising the position to be filled, and the individual managers, conducting interviews as they deemed necessary, then made the final hiring decisions. Aetna "surfaced" Cronin's name for several positions, but he was not offered any of them, and his employment with Aetna was terminated in 1990.

After unsuccessfully pursuing administrative remedies before the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), Cronin commenced the present action in 1991. The complaint alleged that Cronin had never received a job-performance evaluation of less than "meeting" or "exceeding" requirements and that there were many

positions for which he was at least as well qualified as the employees Aetna surfaced for or placed in those positions. Cronin asserted that Aetna had discharged him because of his age and seniority, in violation of the ADEA. Following a period of discovery, Aetna moved for summary judgment on the grounds that there were no facts showing or giving rise to an inference of discrimination against Cronin on the basis of his age, that its reorganization was a legitimate business reason for the termination of Cronin's employment, and that there was no evidence that the reorganization was a pretext for age discrimination.

In response to Aetna's motion, Cronin submitted his own affidavit and numerous Aetna documents. Cronin stated that his responsibilities with Aetna during his 33 years of employment included expense management, financial analysis and planning, setting and enforcing budgets, improvement of hiring and training techniques, and coordinating automation systems. In October 1989, just two months before announcing the reorganization, Aetna had circulated a memorandum to the management team for the northeast region praising Cronin's "varied talents" and his contribution in "meeting multiple regional needs." (Interoffice Memorandum from Senior Administrator to Northeast Region Management Team dated October 16, 1989.) At the time of the reorganization, Cronin's current job-performance evaluation was that he was "exceeding requirements" (Aetna Competency Assessment Form for Cronin dated November 16, 1989); his supervisor stated, "'Jim's background, skills, and knowledge would be applicable to the position of Branch Administration Manager or any administrative position requiring communication, budgeting and monitoring skills.'" (Affidavit of James M. Cronin dated July 30, 1993 ("Cronin Aff."), ¶¶ 5, 13 (quoting March 1, 1989 Aetna Development Review).)

After the reorganization was announced, Cronin took steps to ensure that he would be considered for any position for which he was qualified, speaking to his immediate superior, as well as to PFSD's president and the head of HRD, and informing them that he was willing to relocate or even to accept a lower position in order to remain with Aetna. Notwithstanding Cronin's efforts and his employment history, Cronin "was not interviewed or even contacted by anyone concerning a possible position." (Cronin Aff. ¶ 10.) Despite his efforts and his supervisor's evaluation that he had the knowledge, background, and skills to be a branch administration manager or to hold "'any administrative position requiring communication, budgeting and monitoring skills,'" Aetna surfaced Cronin's name principally for positions requiring underwriting and computer programming expertise. Cronin later discovered that his name had not even been surfaced by Aetna for many positions for which he believed he was plainly qualified. Cronin's affidavit listed eight such positions that he considered illustrative, including the Administrator of Planning or Budget Consultant positions for the Field Planning and Administration Section of either the Northeast Region or the Western Region, as well as various positions as administrator for agent services, annuity and pension administration, or "reporting/control." (Cronin Aff. ¶ 14.)

With respect to the eight positions he listed in his affidavit, Cronin submitted a number of Aetna's employee evaluation documents, which had been submitted by Aetna during the CCHRO proceedings and were later furnished by CCHRO to Cronin, with respect to employees whose names Aetna had surfaced for consideration, including the employees placed in those positions. In the letter accompanying its submission of those documents to CCHRO, Aetna stated that it had relied on the "competency assessment sheets and performance appraisals" in selecting candidates for surfacing; it mentioned no other basis for its decisions. (Aetna letter to CCHRO dated January 10, 1991.) Cronin pointed out that these documents showed that whereas he had been rated as "exceeding" requirements, 60% of the individuals Aetna had recommended for consideration had been rated only as "meeting" requirements (Cronin Aff. ¶ 19), and that the average age of this group of employees was 23 years younger than Cronin, i.e., age 33. As to the eight employees hired for those positions, the Aetna documents submitted by Cronin indicated that they were 11–33 years

younger than Cronin and had worked for Aetna 12–30 years less than Cronin. A partial list showed:

| Employee Placed | Years Younger Than Cronin | Years Fewer With Aetna |
| --- | --- | --- |
| Marcia Kuck | 15 | 16 |
| Marylee Riccio | 24 | 22 |
| Chantel DeMontigny | 33 | 27 |
| Bonnie Lodovico | 23 | 20 |
| Robert Prokopowicz | 11 | 12 |
| Valeria Harris | 30 | 30 |
| Lisa Donato | 26 | 23 |

Cronin argued that Aetna offered little explanation for why younger employees were favored except the talismanic phrases "reduction in force" and "business judgment." He contended that specific rationales Aetna had proffered to CCHRO were belied by the documentary evidence. For example, Cronin noted that Aetna claimed to have selected Kuck for her new position because of her background in "Marketing Services" (*see* Aetna January 10, 1991 letter to CCHRO), but that "Marketing Services" was not one of the areas that Aetna had listed as material to that position. Cronin also noted that DeMontigny had been placed in a Budget Consultant position that required her to "actually develop[ ]" branch and home-office budgets in accordance with business plans, a task that Cronin had been doing for his entire career; DeMontigny was given this position despite having only 11 months' experience in the company other than as a secretary, despite postsecretarial experience that consisted only of preparing reports that compared actual expenses against budgets that had been estimated and established by someone else, and despite having received a corporate evaluation that she had "not a lot of financial background." (Cronin Aff. ¶ 23 (emphases and internal quotes omitted).)

At oral argument of Aetna's summary judgment motion, the district court asked Aetna to provide the court with statistics as to how Aetna's older employees had fared as a group in the reorganization. Thereafter, Aetna produced an unsworn memorandum ("Aetna Supplemental Memorandum") disputing the statistics relied on by Cronin and stating that "older individuals fared better in the selection process than younger individuals." (Aetna Supplemental Memorandum at 2.) Aetna attached lists of the 71 affected employees, without names but showing ages and employee numbers, indicating whether each individual had been terminated, demoted, moved laterally, or promoted following the reorganization. The lists revealed, *inter alia,* that 71 jobs had been eliminated; that of the persons who had held those jobs, 41 were under the age of 40; that 27 of the 71 persons whose jobs were eliminated were placed in other Aetna positions; and that 16 of the 27 were under the age of 40. Aetna argued that "[b]ecause there are no 'specific facts' showing that Cronin was terminated because of his age, summary judgment should enter in favor of Aetna." (Aetna Supplemental Memorandum at 3.)

In a Ruling on Motion for Summary Judgment dated April 11, 1994 ("Ruling"), the district court granted Aetna's motion on the ground that Cronin had not shown "that Aetna's policy was not age neutral." Ruling at 6. Further, on the basis of the statistics produced by Aetna following oral argument of the summary judgment motion, the court found that Cronin had not shown that the policy was discriminatorily applied:

Cronin concedes . . . that his name was surfaced for some positions, but contends that his name should have been surfaced for management/budgeting areas, rather than the underwriting or "hard computer" positions for which his name was surfaced. Furthermore, Cronin contends that 18 out of 20 individuals from his unit were rehired and that the individuals considered for positions for which he was qualified were, on average, twenty-three years younger than Cronin. Even if these statistics are accurate, which Aetna disputes, they fail to create an inference of disparate treatment or impact based on age. Cronin fails to mention, for example, that of the five employees who were promoted after their positions were eliminated, four (80%) were over 50 years old. (*See* Def.Supp.Memo., doc. # 34, at 3.) Furthermore, 50% of those over 50 were either promoted or transferred laterally, whereas only 27% (11/41) of those under 40 were promoted or transferred laterally. (*See id.*) In all, the reorganization resulted in the termination or demotion of 73% (30/41) of the employees under 40, 67% (20/30) of the employees over

forty and 50% ($\frac{5}{10}$) of the employees over 50. (*See id.*) Based on these figures, and in the absence of additional evidence supporting Cronin's claim, the court finds that Cronin fails to establish circumstances that give rise to the requisite inference of age discrimination and summary judgment is appropriate.

Ruling at 6–7 (footnote omitted). The court credited Aetna's

> evidence that Cronin was terminated as part of a reduction in force which resulted in the elimination of Cronin's former position. Aetna also offers evidence that Cronin was considered for reassignment, but was not reassigned based on his performance and abilities as compared to other candidates. It is well established that a reduction in work force is a legitimate, non-discriminatory reason for terminating an employee. *See Parcinski v. Outlet Co.*, 673 F.2d 34 (2d Cir.1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983). Cronin does not challenge his termination, but instead challenges the fact that his name was not circulated for reassignment as widely as he would have desired. Thus, it is Aetna's showing going to the reasons that Cronin was not considered for a position in the reorganization that is apposite to this analysis. Aetna is correct, however, that even if its business judgment was faulty in selecting individuals judged to be more qualified than Cronin, such business judgment may be offered as a legitimate basis for the employment decision. "It is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal." *Dister [v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988) ].

*Id.* at 7–8. The court concluded that Cronin's attempt to present statistical evidence that Aetna had discriminated in favor of younger employees in the reorganization was "rebutted by Aetna's more complete statistical analysis." *Id.* at 9.

The court declined to exercise supplemental jurisdiction over Cronin's state-law claims and dismissed the complaint. This appeal followed.

## II. DISCUSSION

Cronin contends that the district court did not properly deal with his claim that Aetna impermissibly failed to surface his name for positions for which he was plainly qualified and instead recommended less well qualified employees because they were younger. He argues that as to this issue there were facts to be tried. Given the nature of Cronin's claim of discrimination and the requirement that all permissible inferences be drawn in his favor at this stage, we agree.

### A. Summary Judgment and Employment Discrimination

■ A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See, e.g.*, Fed.R.Civ.P. 56(c); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, *see, e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought, *see, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987). The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion. *See, e.g.*, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Ramseur v. Chase Manhattan Bank*, 865 F.2d at 465.

On a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d at 58 (internal quotes omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See, e.g., Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988). In reviewing a grant of summary judgment, we are governed by the same principles and we review the record de novo. *See, e.g., Healy v. Rich Products Corp.,* 981 F.2d 68, 72 (2d Cir.1992); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

In general, a plaintiff asserting an employment discrimination claim has the burden at the outset of presenting evidence sufficient to establish a prima facie case of discrimination. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993) ("*Hicks*"); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) ("*Burdine*"); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). Once the plaintiff has adduced evidence sufficient to establish a prima facie case, if the employer proffers, " 'through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action," *Hicks,* —— U.S. at ——, 113 S.Ct. at 2747 (quoting *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094–95; emphasis in original), the presumption of discrimination raised by the plaintiff's prima facie showing "drops out of the picture," *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749; *see Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir.

1988). The plaintiff has the "ultimate burden of persuasion" to demonstrate that the challenged employment decision was the result of intentional discrimination. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749. However, the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the "motivating" factors. *See, e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 247, 249, 109 S.Ct. 1775, 1788, 1790, 104 L.Ed.2d 268 (1989) (plurality opinion) (where employer has shown a legitimate motive, the plaintiff need not show that the prohibited factor was the sole or principal reason, or "*the* 'true reason' "); *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 82 (2d Cir.1983); *id.* at 86 (discharged plaintiff "was required to prove only that, even if performance and attitude were factors in his termination, nevertheless he would not have been fired but for his age"). Though the plaintiff's ultimate burden may be carried by the presentation of additional evidence showing that "the employer's proffered explanation is unworthy of credence," *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, it may often be carried by reliance on the evidence comprising the prima facie case, without more, *see Hicks,* —— U.S. at ——, 113 S.Ct. at 2749; *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d at 1226. Thus, unless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial. *See generally Chambers v. TRM Copy Centers Corp.,* 43 F.3d at 38.

Though the plaintiff has the ultimate burden of proving the elements of the claim by a preponderance of the evidence, *see, e.g., Hicks,* —— U.S. at ——, 113 S.Ct. at 2749, the showing the plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judg-

ment is "*de minimis,*" see, e.g., *Chambers v. TRM Copy Centers Corp.,* 43 F.3d at 37; *Dister v. Continental Group, Inc.,* 859 F.2d at 1114. To establish a prima facie case of discharge resulting from age discrimination, the plaintiff must show, through direct, statistical, or circumstantial evidence, " '(1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination.' " *Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994) (quoting *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1155 (2d Cir.1993)). In determining whether the plaintiff has met the *de minimis* initial burden of showing "circumstances giving rise to an inference of discrimination," the function of the court on a summary judgment motion is to determine whether the "proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d at 38; *see also Ramseur v. Chase Manhattan Bank,* 865 F.2d at 465; *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d at 58.

■■■■ A plaintiff who claims unlawful discrimination in the termination of employment may prevail notwithstanding the fact that his or her job was eliminated as part of a corporate reorganization or reduction in workforce, for " 'even during a legitimate reorganization or workforce reduction, an employer may not dismiss employees for unlawful discriminatory reasons.' " *Maresco v. Evans Chemetics, Division of W.R. Grace & Co.,* 964 F.2d 106, 111 (2d Cir.1992) (quoting *Hagelthorn v. Kennecott Corp.,* 710 F.2d at 81). A finder of fact is permitted to draw an inference of age discrimination from evidence that, in implementing such a reorganization or reduction, the employer has located new positions for younger, but not older, employees. *See, e.g., Viola v. Philips Medical Systems,* 42 F.3d 712, 715–16 (2d Cir.1994); *Maresco v. Evans Chemetics, Division of W.R. Grace & Co.,* 964 F.2d at 113; *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 192

(2d Cir.1991). In rebutting a plaintiff's prima facie case of discrimination stemming from a reduction in workforce, it is sometimes sufficient for the employer to present evidence of a legitimate economic basis for the reduction, together with statistical evidence that the loss of jobs within the company was not disproportionately borne by employees within the protected age group. *See Woroski v. Nashua Corp.,* 31 F.3d at 109; *see also Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d at 1226. Nonetheless, if the plaintiff has presented evidence that the discharge in fact resulted from discriminatory treatment occurring during the process of eliminating positions and relocating employees, the employer's statistical data showing a nondiscriminatory overall impact, though perhaps relevant, are not as a matter of law dispositive. *See Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 825 (2d Cir. 1992). A claim that the employer has subjected the plaintiff as an individual to unlawfully discriminatory treatment does not require the plaintiff to prove that the reorganization as a whole was pretextual. *See, e.g., id.; Thornbrough v. Columbus & Greenville R. Co.,* 760 F.2d 633, 646 n. 20 (5th Cir.1985) (evidence that, as a result of employer's reduction in force, average age of its employees increased was relevant, but was not dispositive of individual disparate-treatment issue); *see also Cooper v. Federal Reserve Bank,* 467 U.S. 867, 880, 104 S.Ct. 2794, 2801, 81 L.Ed.2d 718 (1984) (judgment dismissing class action alleging pattern or practice of discrimination by employer not res judicata as to individual employees' claims of disparate treatment). In such circumstances, a plaintiff defending a motion for summary judgment need demonstrate only that a genuine issue exists as to whether, despite the employer's ostensible rationale and overall operations, intentional discrimination is the persuasive explanation for the plaintiff's treatment.

### B. *The Record in the Present Case*

■■■ The only question for the present appeal is whether Cronin presented sufficient evidence to establish the fourth element of his prima facie case, *i.e.,* sufficient evidence

to permit a rational factfinder to draw an inference that he was discriminated against on the basis of his age. We conclude that he did and that Aetna's reliance on its reorganization, even accepting its statistical evidence as to the overall nondiscriminatory impact of that reorganization on the displaced employees over the age of 40, did not sufficiently meet the thrust of Cronin's disparate-treatment theory to permit the entry of judgment in Aetna's favor as a matter of law.

The essence of Cronin's contention was that Aetna discriminated against him on the basis of his age in (1) recommending him for consideration primarily for positions for which he was not well qualified, and (2) failing to surface his name for any of the positions for which he was best qualified. With the evidence taken in the light most favorable to Cronin as the party opposing summary judgment, the former contention finds support in the only document in the record that purports to describe the 10 positions for which Aetna indicates that it surfaced Cronin's name, i.e., an August 3, 1990 letter from Aetna to CCHRO. That letter stated that Cronin was not hired for most of the positions for which his name was surfaced because he lacked background in computer programming or in underwriting. Yet Aetna knew those areas were not within his expertise. For example, as to several of the positions for which Aetna surfaced Cronin's name, its letter stated:

> These positions required individuals ... who had a working knowledge of personal computers, the mainframe environment, and end user languages. As reflected on his Competency Assessment Form, Mr. Cronin did not identify computer savvy and system building as a demonstrated strength. Therefore, since Mr. Cronin did not possess the computer knowledge required for these positions, [the decision-making manager] did not consider him a qualified candidate.

(Aetna's August 3, 1990 letter to CCHRO at 3.) Thus, Aetna had surfaced Cronin's name for areas which clearly required skills that Cronin had not claimed and which were not among those that his supervisor, in the then-current evaluation, had described as Cronin's strengths.

Cronin's second contention, i.e., that Aetna preferred to retain younger employees and therefore refused to recommend Cronin for consideration for any of the positions for which he was best qualified, finds support in (a) the evidence that Cronin had received good or very good job-performance ratings, and Aetna's failure to point to any negative appraisal of his performance or qualities as an employee; (b) the 1989 Aetna evaluations that Cronin possessed varied and valuable skills that would be applicable to, e.g., any administrative or budgeting position; (c) the evidence that Aetna did not surface his name for the most suitable administrative or budgeting positions; and (d) Aetna internal documents showing that most of the candidates Aetna recommended for the eight positions listed by Cronin as illustrative of those for which he was well qualified had received lower performance ratings than Cronin and were an average of 23 years younger than he.

Aetna's efforts on appeal to parry the effects of the documentary evidence presented by Cronin are misguided. For example, its argument that the documents proffered by Cronin are "immaterial," present "incomplete demographics" (Aetna brief on appeal at 12), and hence would be inadmissible at trial (id. at 12–13, 18–20), is wrong. The documents plainly are relevant to the qualifications of employees Aetna preferred to recommend while suppressing the name of Cronin, and as Aetna documents they would be received in evidence as admissions. If the documents present "incomplete demographics," and if such demographics are relevant, the trial court would permit Aetna to complete the picture; it would not exclude these relevant documents from evidence. Aetna's further contention that Cronin did not show that these internal documents "were ... all considered by the decision makers," or "constitute[d] the entire body of relevant information" (id. at 18), even if substantiated and not contradicted by its submissions to CCHRO, provides no ground requiring the court to exclude the documents or the factfinder to disregard them. Similarly, although Aetna contended that statements in its January 10, 1991 letter to CCHRO should not be held

against it because that letter was intended to be merely a preliminary report rather than a "complete" or "definitive" set of reasons for its preference for candidates other than Cronin (Aetna brief on appeal at 21), that characterization might, if proffered through sworn testimony, raise questions of fact to be resolved at trial. It does not, however, provide a basis for entry of judgment in Aetna's favor as a matter of law.

■ The statistical evidence submitted by Aetna did not conclusively negate the permissible inference that Cronin was treated unfavorably because of his age, for Aetna's evidence focused on the overall impact of the reorganization. Even assuming the accuracy of Aetna's data (which was unsworn and was submitted after oral argument of the summary judgment motion), this evidence that the reduction in force in general did not have a discriminatory impact on the protected class as a whole did not eliminate the possibility that Cronin individually suffered disparate treatment at the surfacing stage of the reorganization procedure. Aetna has argued that Cronin was not surfaced for the alternative positions for which he claimed to be qualified because Aetna considered most relevant the employee's responsibilities in his or her "most recent position." (Reply to Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment at 7 n. 6). The factfinder would not be required to accept this assertion, especially in light of, e.g., evidence that the most recent job evaluations for 60% of those recommended for jobs for which Cronin was suited were lower than the most recent evaluation of Cronin.

In sum, crediting Cronin's sworn statements and drawing all permissible inferences in his favor, the trier of fact could reasonably find that Aetna (a) believed Cronin to be multi-talented in the administrative and budgeting areas, (b) knew that Cronin was not highly skilled in computer programming and underwriting, (c) chose to surface his name primarily for positions in the latter areas knowing that he would not be chosen, and (d) deliberately refused to surface his name for administrative and budgeting positions for which it knew him to be well qualified and more likely to be selected. From the evidence that in most instances the persons surfaced by Aetna for administrative and budgeting positions (a) had job-performance ratings lower than Cronin's, (b) averaged many years' less experience than Cronin, and (c) had an average age of 33, i.e., 23 years younger than Cronin, a rational trier of fact could find that Aetna's failure to surface Cronin's name for positions for which he was well qualified bespoke an intent to discontinue his employment because of his age.

The evidence presented by Cronin was more than merely speculative, and we conclude that it satisfied his de minimis burden to adduce evidence from which a rational inference of age discrimination could be drawn. Though a trier of fact could, from the evidence in the record thus far, infer that there was no intent to discriminate against Cronin on the basis of his age, it could infer instead that Aetna did not want its managers even to consider Cronin for positions for which he was better qualified than the younger persons Aetna recommended, and that Cronin's age was a factor in Aetna's failure to recommend him for consideration. It remains the province of the finder of fact to decide which inference should be drawn. Summary judgment was inappropriate.

## CONCLUSION

We have considered all of Aetna's arguments in support of summary judgment in its favor and have found them to be without merit. The judgment of the district court dismissing Cronin's federal and state law claims is vacated, and the matter is remanded for trial.

Costs to plaintiff.