**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**DOREMUS & COMPANY, Defendant.**

No. 93 Civ. 3169 (SS).

United States District Court, S.D. New York.

Oct. 20, 1995.

James L. Lee, Regional Attorney, Delner Franklin Thomas, Supervisory Trial Attorney, Ann Thacher Anderson, Trial Attorney, of counsel, for Plaintiff.

Davis & Gilbert, New York City (Mitchell I. Weitz, Gregg A. Gilman, of counsel), for Defendant.

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendant Doremus & Company ("Doremus") moves pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing this age discrimination complaint filed by the Equal Employment Opportunity Commission ("EEOC") on behalf of Andrew Quinn ("Quinn"). For the reasons discussed below, the motion to dismiss is **denied.**

### BACKGROUND

The core allegation in this action is that Doremus discriminated against Quinn on account of his age by firing him, at age 58, six months after transferring him to a lower level position with a promise of reinstatement to his former work when the opportunity arose. Plaintiff claims Doremus failed to reinstate him to his former position while hiring younger people instead at the same job title for the same work.[1] Doremus maintains that adverse economic conditions were the cause of its actions, not age-driven animus against Quinn.

The following pertinent facts are undisputed by the parties and, unless otherwise stated, are drawn from the Local Rule 3(g) statements furnished by the parties.

Doremus is an advertising agency specializing in financial notice advertising. Quinn worked as an Account Executive for Doremus in its financial advertising division for 24 years, from 1966 to 1990. He was given successively more senior titles, ending with Senior Vice President. Account Executives have responsibility for administration and oversight of the work for the clients assigned to them. Prior to that, Quinn worked for 15 years in Doremus' production department. There is no dispute as to Quinn's qualifications: "Doremus has never argued that Quinn was incompetent or that he was discharged for poor performance." Def.'s Reply Mem. at 10 n. 4.

In 1988, Doremus suffered a sharp contraction of its business due to the October, 1987 decline of the stock market. As a consequence of these adverse economic conditions, Doremus' income from financial advertising dropped 50% in 1990 as compared to 1987. The company laid off 25% of its workforce in 1990 alone, and cut salaries at the same time. On Oct. 1, 1989, First Boston, a large client of Doremus, for whom Quinn was the Account Executive, terminated its relationship with Doremus. In June, 1990, Doremus offered, and Quinn accepted, a transfer to the post of night supervisor of its typesetting department. The transfer involved no cut in pay or change in title. The transfer was also premised on a promise to return

---

1. I note at the outset that the Complaint contains only one cause of action:

 On or about November 24, 1990, Defendant EMPLOYER engaged in unlawful employment practices at its New York, New York facility in violation of Section (9a)(1) of the ADEA, 29 U.S.C. § 623(a)(1). The practice was the discriminatory discharge of Andrew Quinn because of his age.

 Complaint at ¶ 7.

 It could be argued that because the Complaint does not address any of Doremus' actions prior to the firing, they are not now cognizable. However, the extensive discovery and motion record before me centers on Doremus' actions commencing with the transfer and leading up the firing. Hence, these actions are and have been treated by the parties as an integral part of assessing the claim of discriminatory discharge.

Quinn to his original position of Account Executive if business warranted it. Troeger Dep. Ex. 3 at 2 (Letter to EEOC of Feb. 2, 1991 stating "This assignment [to typesetting] was intended to be temporary until such time as business conditions would permit Quinn to resume account management responsibilities.").

Six months later, in November 1990, Doremus reduced its typesetting staff, dismissing a number of employees, Quinn included. Again, Doremus promised Quinn that if business picked up in the following year he would be rehired as an Account Executive. Quinn remained on the payroll at half pay until December 31, 1991 at which time he was terminated. About five months later, after Quinn complained of discrimination to the EEOC, a Doremus executive made a call to him about rehiring him as an Account Executive.[2]

During the period commencing with the loss of the First Boston account (Oct. 1, 1989) and ending with Quinn's final termination (Dec. 31, 1991), the following individuals were transferred, hired or promoted to the position of Account Executive:

* Migdalia Hernandez, age 34, promoted on Oct. 1, 1989;
* Mary Gilley, age 25, promoted in June 1990;
* Louise B. Juhan, age 39, hired on Aug. 24, 1990;
* Jeanmarie McFadden, age 39, hired on Sept. 24, 1990;

and

* Richard Beccle, age 25, transferred in October, 1991.

### DISCUSSION

The standards for evaluating summary judgment motions are well established. Rule 56(c) provides that summary judgment is appropriate when:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, is any, show that there is not genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

■ The burden is on the moving party to show that no genuine issue of material fact exists. *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994) (citation omitted). A genuine issue of material fact exits where "the evidence is such that 'a reasonable jury could return a verdict for the nonmoving party.'" *Iacobelli Constr., Inc. v. County of Monroe,* 32 F.3d 19, 23 (2d Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.

*Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995) (citations omitted).

■ Employment discrimination cases, however, require a particularized review of the proffered facts to determine whether the parties have met the burdens of proof required by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), ("Burdine") and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ("McDonnell Douglas"), as explained in *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("Hicks"). These cases require, in order to survive summary judgment, that: (1) the plaintiff establish a prima facie case of discrimination, *Hicks* at 504–06, 113 S.Ct. at 2746–47; *Burdine* at 252–53, 101 S.Ct. at 1093–94; *McDonnell Douglas* at 802, 93 S.Ct. at 1824; (2) the defendant then demonstrate reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the action complained of, *Hicks* at 506, 113 S.Ct. at 2747

---

**2.** Quinn told the executive who made the call that he had to consult with his attorney before responding. After the consultation, Quinn claims he called the executive back with the intent of accepting the offer, leaving a message to that effect. The executive denies getting the message.

(quoting *Burdine* ) and (3) the plaintiff then demonstrate that the defendant's articulated reason is merely a pretext for discrimination, *Hicks* at 507–08, 113 S.Ct. at 2747–48; *Burdine* at 253, 101 S.Ct. at 1093–94; *McDonnell Douglas* at 804–05, 93 S.Ct. at 1825–26.

 The Second Circuit has recently summarized the prima facie evidentiary requirements in *Cronin.*

> To establish a prima facie case of discharge resulting from age discrimination, the plaintiff must show, through direct, statistical or circumstantial evidence '(1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination....' A plaintiff who claims unlawful discrimination in the termination of employment may prevail notwithstanding the fact that his or her job was eliminated as part of a corporate reorganization or reduction in workforce....

*Cronin*, at 204 (quoting *Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994)).

 It is uncontroverted that the plaintiff in this case has met the first three elements of his prima facie burden of proof. Plaintiff was 58 years old when discharged; he was qualified for the post of Account Executive, and he was discharged. Plaintiff has also produced sufficient evidence to create an inference of discrimination, in the form of the proof of the five promotions to Account Executive of younger people during the six months before Quinn was discharged. Defendant has countered with evidence that a reasonable jury could find sustains their burden at the second level of the inquiry, proffering evidence that there were company-wide layoffs between 1989 and 1991 that

included individuals both within and outside the ADEA protected class of over–40 employees, and that a reduction in force was required in typesetting that justified Quinn's discharge. The focus then turns to the third level, as it inevitably must in cases of this type, to plaintiff's evidence of pretext. I am guided in this instance by the following:

> [T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decisions, but only that they were not the only reasons and that the prohibited factor was at least one of the "motivating" factors.

*Cronin* at 203 (citations omitted).

> Thus, unless the employer has come forward with evidence of a *dispositive nondiscriminatory reason* as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial.

*Id.* (citing *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 38 (2d Cir.1994)) (emphasis added).

 From the record in this case, I find genuine issues of material fact as to the claims of age discrimination on the part of Doremus culminating in Quinn's dismissal.[3] At least three facts proffered by the plaintiff provide a basis for material dispute of Doremus' intent in Quinn's discharge: (1) during the period it had shunted aside Quinn by transferring him from financial advertising to the type shop, purportedly because of a contraction in the financial advertising department's workload, Doremus hired or promoted four new employees into that department, an average 25 years younger than Quinn (Gilley,

---

3. I have not considered plaintiff's proffer of discriminatory treatment of two other Doremus employees in ADEA's protected class, Account Executive Stanley Rygor, age 63, and Payroll Supervisor Rose Lia, age 57. The Rygor affidavit and associated record did not support plaintiff's allegation of discriminatory animus. All alleged facts regarding Lia were hearsay and thus cannot be considered on this motion. Neither do I credit the EEOC's contention that by granting Account Executive Linda O'Conner maternity leave and part time status subsequent to her giving birth, Doremus displayed favoritism for O'Conner at Quinn's expense because she was 30 years old. Federal law barring discrimination on account of pregnancy as well as the accommodation of family needs are the only reasonable inferences to be drawn from Doremus' actions in this dissimilar situation.

Juhan, McFadden and Beccle);[4] (2) the average age of Account Executives in financial advertising was 49.6 years in February, 1989, when the cutbacks began, as compared to 38.8 years in November, 1990, when Quinn was fired,[5] and (3) Doremus did not reduce the number of Account Executives despite the adverse economic conditions, but its personnel actions nonetheless reduced the average age of its Account Executives by 10.8 years. Comparison of the plaintiff's age to the average age of those hired in his stead is a basis for inferring age discrimination. *Cronin*, 205. Likewise, sharp changes in the average age of employees in plaintiff's department as a result of reductions in force are also grounds for drawing age discrimination inferences. *Compare Woroski v. Nashua*, 31 F.3d 105, 109 (2d Cir.1994) (positive inference drawn from absence of decline in age).

Doremus has proffered a series of explanations for its hiring of five younger employees in the financial advertising department. I have reviewed the explanations to determine whether, individually or in the aggregate, they constitute a "dispositive nondiscriminatory reason" for Quinn's treatment. I find they do not. In the case of Hernandez, her promotion is said to have been "consistent with Doremus' downsizing and cost saving efforts" because she agreed to perform both the Account Executive and Assistant Account Executive functions at considerably less pay than the average for Account Executives. Def.'s Mem. of Law at 8. In the cases of Gilley, Juhan and McFadden, Doremus contends that clients had specifically requested these individuals as their Account Executives and that they were paid less. *Id.* at 21–23. In the case of Beccle, Doremus claims he was transferred to New York to "broaden his experience." His salary too was well below Quinn's. *Id.* at 24.

The hiring of five additional individuals, no matter what their age, during a period of purported business contraction, creates a genuine issue as to whether economic conditions were so severe that Quinn's transfer, failure to reinstate and firing were required. That Quinn was qualified for and promised an Account Executive position when it became possible, but *all* of the five individuals hired for the available positions were under 40, suggests a permissible inference for a trier of fact to conclude that age discrimination, at least in part, propelled the personnel decisions. In all five instances, the business reasons cited for the promotions are not so dispositive as to overcome a permissible inference of pretext. Quinn was not offered the opportunity to bid for the available openings although Doremus admits he was qualified for and promised such an opportunity when it became possible. Additionally, as to the promotion or hiring of Gilley, Juhan and McFadden, the record is devoid of any indication that Doremus attempted to promote Quinn to its clients as the competent and experienced Account Executive they concede him to have been. Some affirmative conduct of this type would have lent some support to Doremus' position that clients, not it, rejected Quinn as their Account Executive for nondiscriminatory reasons.

Defendants argue that a fourth layer of proof is required under *Hicks*. They maintain that even if the court finds that plaintiff has met its burden of asserting facts sufficient to allow a reasonable jury to conclude that Doremus' explanations are pretextual, plaintiff still has an obligation to offer some additional affirmative evidence that the acts complained of were motivated by age-driven

4. Plaintiff claims there were five such employees. I have not counted Toni Buonfiglio, age 28, hired in June 1990, because she was hired as an Assistant Account Executive, a job substantially below Quinn's Account Executive position in responsibility and thus not one which could have gone to Quinn. Nevertheless Buonfiglio's hiring, and the October 1989 promotion of Hernandez into financial advertising, casts additional doubt on the claim that economic conditions required staff reductions in that department.

5. In February 1989 the department consisted of Quinn, Kuntz, Rygor, Daniels and O'Conner, with O'Conner the only Account Executive under 40. Def.s' Mem. of Law at 4. After the staff changes that included Quinn's transfer and termination, the department consisted of Kuntz, Daniels, Hernandez, O'Conner, and Gilley, with Kuntz and Daniels being the only Account Executive's over 40. Def.'s Mem. of Law at 8–9. I have not included Rygor, as he works only two days per week on projects not originally a part of the department's purview.

animus. Def.'s Reply Mem. of Law at 1. This is not the law in our circuit.

> [The employer] misreads the Supreme Court's statement in *Hicks* that once a defendant produces evidence of a legitimate, nondiscriminatory reason for his or her action, the plaintiff must then establish that the defendant's actions were intentionally discriminatory.... Justice Scalia took pains to preclude such an interpretation of the Court's decision when he observed that, upon rejection of its action, no additional proof of discrimination is required.

*Binder v. Long Island Lighting Co.,* 57 F.3d 193, 200 (2d Cir.1995) (quoting *Cabrera v. Jakabovitz,* 24 F.3d 372, 385 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994)). *See also Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 142 (2d Cir.1993); *DeMarco v. Holy Cross High Sch.,* 4 F.3d 166, 170 (2d Cir.1993).

## CONCLUSION

There are genuine issues of material fact sufficient to permit a reasonable jury to find for the plaintiff in this case. Therefore, defendant's motion for summary judgment is **denied.**

**SO ORDERED.**