**Rosalie MOORE, Plaintiff,**

v.

**CANDLEWOOD HOLDINGS, INC., Defendant.**

No. 07–cv–4878 (ADS)(AKT).

United States District Court, E.D. New York.

May 26, 2010.

---

Cooperman Lester Miller LLP, by Eric H. Gruber, Esq., of Counsel, Manhasset, NY, for the plaintiff.

Steven Cohn, PC, by Steven Cohn, Esq., of Counsel, Carle Place, NY, for the defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this case, the plaintiff Rosalie Moore seeks to recover on two promissory notes: (1) a $540,000 demand promissory note allegedly issued in her favor by the defendant, Candlewood Holdings, Inc. ("Candlewood"), in 1997, and (2) a $235,000 note also issued by Candlewood. The defendant now moves for partial summary judgment dismissing the plaintiff's claim on the $540,000 note as barred by the relevant statute of limitations. There is no pending motion relevant to the $235,000 note. For the reasons set forth below, the Court grants the defendant's motion.

### I. BACKGROUND

In 1997, plaintiff Rosalie Moore was the sole shareholder of the newly-formed Candlewood Holdings, Inc., a New York entity that, shortly after formation, was used to purchase a single-carwash business in the Bronx, New York. At the time of Candlewood's formation, Rosalie Moore's husband, Alan Moore, served as Candlewood's president, and managed all the affairs of the business. Rosalie Moore also states that Alan Moore managed all of her per-

sonal financial affairs as well. On July 1, 1999, Rosalie Moore sold a 50% interest in Candlewood to a third party named Ano, Inc. ("Ano"), who on May 3, 2000, then increased its holdings in Candlewood to a two-thirds stake. Nevertheless, Alan Moore remained president of Candlewood until late 2005, when Candlewood terminated him. At that time, Rosalie Moore remained a one-third equity owner of Candlewood.

Rosalie Moore alleges that, on January 24, 1997, shortly after Candlewood was formed, she loaned $540,000 to Candlewood in exchange for a demand promissory note (the "Promissory Note"). The note was signed by Alan Moore as Candlewood's president, and it affirmed that Candlewood would repay the plaintiff the sum of $540,000 upon demand, with 9% annual interest. The plaintiff alleges that she made no demand on this note until November 9, 2007, at which time she held only a one-third stake in Candlewood and her husband Alan had been removed as president of the company. With the interest that had accrued on the debt, the plaintiff's demand for payment from Candlewood was for more than one million dollars. Candlewood refused to pay on the note, and on November 26, 2007, Rosalie Moore commenced the present action. Rosalie Moore seeks payment on the Promissory Note, as well as payment on a second note that is not relevant to the present motion. On December 15, 2009, Candlewood moved for summary judgment on the plaintiff's claim for payment on the Promissory Note, asserting that it is barred by the New York six year statute of limitations. The plaintiff does not deny that a six year statute of limitations applies, but rather asserts that the limitations period was reset by Candlewood's acknowledgement of its debt to her. Candlewood denies an acknowledgement of the debt and denies that the limitations period was reset.

## II. DISCUSSION

### A. Legal Standard

Summary judgment under Fed.R.Civ.P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "lit-

tle or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

## B. As to the Application of the Statute of Limitations

■ It is well-settled that, under the New York Civil Practice Law and Rules, the time to commence an action on a promissory note is six years from the date of its accrual. *See Lynford v. Williams,* 34 A.D.3d 761, 762, 826 N.Y.S.2d 335 (2d Dep't 2006); *Schleifer v. Schlass,* 303 A.D.2d 204, 756 N.Y.S.2d 538 (1st Dep't 2003). In the case of a demand instrument, the debt accrues immediately upon issuance of the note, and therefore the statute of limitations also begins to run at that time. *Id.* However, this limitations period for an accrued debt may be reset by the debtor pursuant to New York General Obligations Law ("NY GOL") § 17–101, which provides that a signed, written acknowledgement of the debt will recommence the limitations period. Specifically, N.Y. GOL § 17–101 states:

> An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules . . . .

■ New York courts have interpreted N.Y. GOL § 17–101 to further require that, for a writing to restart the limitations period for a debt, it must (1) "recognize an existing debt" and (2) "contain nothing inconsistent with an intention on the part of the debtor to pay it." *Knoll v. Datek Securities Corp.,* 2 A.D.3d 594, 769 N.Y.S.2d 581 (2d Dep't 2003); *Estate of*

*Vengroski by Vengroski v. Garden Inn,* 114 A.D.2d 927, 928, 495 N.Y.S.2d 200 (2d Dep't 1985). In determining whether a particular signed writing meets these requirements, the Court's primary focus is to determine "whether the acknowledgment imports an intention to pay." *Id.* Generally, this analysis does not require resort "to any subtle or refined distinctions contrary to ordinary business understanding and rules of common sense." *Vengroski,* 114 A.D.2d at 928, 495 N.Y.S.2d 200 (quoting *Curtiss–Wright Corp. v. Intercontinent Corp.,* 277 A.D. 13, 17, 97 N.Y.S.2d 678 (1st Dep't 1950)). In addition, courts have also required that, for a writing to effectively reset the limitations period, it must have been timely delivered to the obligor, or to someone on the obligor's behalf. *Lynford,* 34 A.D.3d at 763, 826 N.Y.S.2d 335; *In re Brill,* 318 B.R. 49, 60 (Bankr.S.D.N.Y. 2004).

Here, the Promissory Note was executed on January 24, 1997, and, because the note is payable on demand, the relevant six year limitations period commenced that same day. According to the defendant, the limitations period was not thereafter tolled or reset, and thus the period for suit on the note expired six years later, on January 24, 2003. The defendant asserts that, because the plaintiff's present cause of action for payment on the Promissory Note was not filed until November 26, 2007, it is untimely and must be dismissed.

The plaintiff disagrees, and contends that Candlewood's 2004 tax return, as well as Candlewood's tax returns for 2000, 2001, and 2002, acknowledged Candlewood's debt to her with regard to the Promissory Note. The plaintiff asserts that these writings reset the relevant limitations period to run until 2010, and thus her 2007 suit for payment on the Promissory Note was timely. Not so, says the defendant, who denies that Candlewood's tax

returns were sufficient to reset the relevant limitations period.

The plaintiff relies on a single line from each of Candlewood's tax returns to support her assertion that these writings restarted the limitations period. For each return, the relevant line states Candlewood's outstanding "loans from shareholders" for the beginning and end of that year. In 2004, this line states that this amount was $972,280 for the beginning of 2004 and $865,324 for the end of 2004. The relevant portion of the 2004 tax return is reproduced below:

| Form 1120 (2004) CANDLEWOOD HOLDINGS, INC. | 22-3481145 | Page 4 |
|---|---|---|

Note: The corporation is not required to complete Schedules L, M-1, and M-2 if Question 13 on Schedule K is answered "Yes."

| Schedule L Balance Sheets per Books | Beginning of tax year | End of tax year |
|---|---|---|

. . .

19 Loans from shareholders ................. | | 972,280 | | 865,324

(Attorney Dantzig Aff., Ex. J, Candlewood 2004 Return at 4.) The relevant lines from the other tax returns are substantially similar to this line in the 2004 tax return.

According to the plaintiff, this line item—while failing to mention the plaintiff by name or to specifically correlate to the amount due to her under the Promissory Note—nevertheless *included* the amount owing on the Promissory Note at issue. The plaintiff therefore asserts that this tax return item was sufficient to satisfy the requirements of N.Y. GOL § 17–101, and to reset the limitations period on her claim pursuant to the Promissory Note. She thus contends that her present claim is timely.

■ The first problem the plaintiff faces in relying on these tax returns as an acknowledgement of the Promissory Note is that she admits that she never saw them. As noted above, a writing generally must be communicated to the lender to restart the limitations period. *Lynford*, 34 A.D.3d at 763, 826 N.Y.S.2d 335; *In re Brill*, 318 B.R. 49, 60 (Bnkrtcy.S.D.N.Y.2004). The plaintiff seeks to avoid this problem by asserting that her husband Alan Moore—who signed the tax returns as Candlewood's president—was her *de facto* financial agent. Thus, when Alan Moore reviewed the tax returns at the time he signed them, Rosalie Moore was effectively made aware of the debt through Alan as her agent. The Court has some concern as to the soundness of the plaintiff's theory of agency, but finding that the present motion should be granted on other grounds, it need not resolve this issue.

The next problem that the plaintiff faces in relying on these tax returns is that there is some question as to whether carrying a debt on a tax return or financial statement may satisfy the requirements of N.Y. GOL § 17–101. In general, courts have concluded that financial statements and tax returns *alone* are insufficient to restart the statute of limitations. *Seattle Pac. Indust., Inc. v. Golden Valley Realty Assoc's*, 54 A.D.3d 930, 932, 864 N.Y.S.2d 500 (2d Dep't 2008); *Skiadas v. Terovolas*, 271 A.D.2d 521, 706 N.Y.S.2d 138 (2d Dep't 2000); *Vengroski*, 114 A.D.2d at 928, 495 N.Y.S.2d 200. However, New York courts have also generally held that, if there is other evidence that the debtor listed a debt on its books or in its tax return with the intention of acknowledging its obligation to repay to the lender, this may be sufficient to restart the limitations period. *Seattle Pac. Indust., Inc.*, 54 A.D.3d 930 at 932, 864 N.Y.S.2d 500; *Cognetta v. Valencia Developers, Inc.*, 8 A.D.3d 318, 320, 778 N.Y.S.2d 80 (2d Dep't 2004); *Vengroski*, 114 A.D.2d at 928, 495 N.Y.S.2d 200.

■ Nevertheless, even if a tax return could generally be sufficient under N.Y. GOL 17–101, the Court finds that the tax returns in this case are insufficient to toll

the relevant statute of limitations. First and foremost, the Court finds it problematic that the tax returns only generally list "loans from shareholders," and do not name Rosalie Moore as a lender. Candlewood had two shareholders at the time that all of these tax returns were prepared, and thus the "loans from shareholders" line item in Candlewood's tax returns does not necessarily acknowledge that Candlewood owed Rosalie Moore *any* debt—let alone that it owed her the debt specifically related to the Promissory Note.

The plaintiff attempts to overcome this deficiency by stating that her husband and "agent" Alan Moore knew, from his role as president of Candlewood, that the "loans from shareholders" line item on Candlewood tax returns was meant to acknowledge the Promissory Note debt. However, the Court finds that the plaintiff's reliance on Alan Moore's personal understanding of Candlewood's tax returns is inconsistent with the requirement in N.Y. GOL § 17–101 that a debt must be acknowledged in a writing to restart the limitations period. Allan Moore's alleged intent with regard to these documents, stated now in an effort to defeat summary judgment, is a far cry from a written acknowledgment of the Promissory Note by Candlewood.

The second reason that the Court finds the tax returns to be insufficient to restart the limitations period is that the total amount listed for "loans from shareholders" on the 2004 tax return is *less* than what Candlewood would have owed to the plaintiff under the Promissory Note at that time. Calculating interest at the annual rate of 9%, as set forth in the Promissory Note, the total amount owed to the plaintiff under the Promissory Note at the beginning of 2004 was $987,141.13. However, the total amount listed under "loans

from shareholders" for that time is only $972,208. Even more incongruous is the fact that, despite the plaintiff's assertion that Candlewood never made any payment on the Promissory Note, the tax return lists Candlewood's outstanding "loans from shareholders" as having decreased to $865,324 by the end of 2004—at which time the debt owing on the Promissory Note would have increased to more than one million dollars. While the plaintiff appears to imply that this is because the tax returns only reflected the principal owed under the Promissory Note, the Court finds this unconvincing. *Compare Atlantic Nat. Trust LLC v. Silver,* 9 A.D.3d 321, 781 N.Y.S.2d 317 (1st Dep't 2004) (noting that an acknowledgement of a debt tolling the statute of limitations stated both principal and accrued interest); *Banco Do Brasil S.A. v. State of Antigua and Barbuda,* 268 A.D.2d 75, 76, 707 N.Y.S.2d 151 (1st Dep't 2000) (same).

The Court notes that Candlewood's tax returns for 2000, 2001, and 2002 state a "loans from shareholders" total that is greater than the debt owing under the Promissory Note for those years. Thus, unlike the 2004 tax return, these tax returns mathematically could have included the outstanding principal and interest due on the Promissory Note. However, similar to the 2004 tax return, none of these tax returns specifically lists any amounts owing to the plaintiff. Moreover, for each of these tax returns and also for the 2004 return, the plaintiff explicitly identifies, through the affidavit of Candlewood's accountant at the time, David Lion, how much of Candlewood's "loans from shareholders" were owed to the plaintiff. Even ignoring that the plaintiff asserts that she had other loans outstanding to Candlewood at this time, in each case, the total amount that accountant Lion identifies as owed to the plaintiff is still less than what

would have been owed under the Promissory Note at the relevant time:

| Year | Amount "Rosalie Moore was owed" by Candlewood, according to the plaintiff (Lion Aff., ¶ 13) | Court's Calculation of Principal and interest owed under Promissory Note |
|---|---|---|
| 2000 | $629,679.65 | $699,315.66 |
| 2001 | $649,659.26 | $762,254.07 |
| 2002 | $671,125.43 | $830,856.94 |
| 2004 | $631,047.43 | $987,141.13 |

The Court finds that this is also inconsistent with the plaintiff's position that the relevant tax returns acknowledged the Promissory Note—particularly given that the amount that accountant Lion identifies as owed to the plaintiff in 2004 was actually less than what Lion states the plaintiff was owed in 2001 and 2002. The Court thus finds that the tax returns fail to provide the signed, written acknowledgement of the debt required by the law.

For these reasons, the Court finds that Candlewood did not provide any writing beyond the Promissory Note that acknowledged its obligation to pay the plaintiff the amount due pursuant to that note. The Court thus finds that the statute of limitations to commence suit on the Promissory Note expired on January 24, 2003. As the plaintiff's current cause of action for payment on the Promissory Note was commenced November 26, 2007, it is time-barred. The Court therefore grants the defendant summary judgment on the plaintiff's cause of action to recover on the Promissory Note, and dismisses this cause of action.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendant's motion for partial summary judgment on the plaintiff's cause of action to recover on the promissory note dated January 24, 1997 is granted, and that cause of action is dismissed.

**SO ORDERED.**