**Paula EASTMER, Plaintiff,**

v.

**WILLIAMSVILLE CENTRAL SCHOOL DISTRICT, Defendant.**

No. 95–CV–0141A.

United States District Court, W.D. New York.

May 5, 1997.

Michael A. Moravec, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for Plaintiff.

Anne S. Simet, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for Defendant.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on April 13, 1995. On July 15, 1996, defendant filed a motion for summary judgment. On January 14, 1 997, Magistrate Judge Heckman filed a Report and Recommendation denying defendant's motion for summary judgment.

Defendant filed objections to the Report and Recommendation on February 10, 1997, and plaintiff filed her response thereto on March 27, 1997. Oral argument on the objections was held on April 24, 1997.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.[1]

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for summary judgment is denied. Counsel are ordered to appear on May 21, 1997 at 9:00 a.m. for a meeting to set a trial date.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). Defendant filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Oral argument of this motion was held before the undersigned on November 19, 1996. For the following reasons, it is recommended that defendant's motion be denied.

### *BACKGROUND*

This action was brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York Human Rights Law § 290 *et seq.* Plaintiff was born on May 22, 1941. She was employed in November of 1980 by defendant Williamsville Central School District as a teacher's aide. In September of 1982, she was assigned to the Special Education Team at Williamsville East High School, where she worked as a teacher's aide until she resigned on September 3, 1993. (*see* Item 1; Item 12, ¶ 3).

After the commencement of the 1992–93 school year, a temporary replacement (regular substitute) special education teaching position became available at Williamsville East. The position was posted, and 229 people applied for the job. Four candidates were interviewed for the position, but one of those candidates—Tracey Anne Bulger—withdrew her name from consideration for the substitute teaching position. Plaintiff was one of the other three candidates who were interviewed, and was one of two candidates whose names were submitted to Eugene L. Bartkowski, defendant's Director of Pupil Personnel Services, for further consideration. The other candidate was Kathi Kowalski. Mr. Bartkowski tabulated the results of the interviews for the two candidates (*see* Item 19, Exs. A–C). By memorandum dated November 2, 1992, Mr. Bartkowski recommended to Louis J. Nanni, defendant's Assistant Superintendent for Personnel, that Ms. Kowalski be offered the position (Item 9, Nanni Aff., Ex. 21). According to Mr. Bartkowski, "the collective opinion was that [Ms. Kowalski] was the better candidate, although the rating was very close" (*id.*).

---

1. In its objections and at oral argument, defendant argued that, in her Report and Recommendation, the Magistrate Judge ignored and misstated the record. At oral argument, plaintiff's counsel agreed that, in certain instances, the Magistrate Judge made statements regarding the record that were not complete. The Court has reviewed the disputed statements and finds that, although some of the statements may be incomplete, they are all accurate and that the Magistrate Judge's conclusions are supported by the record.

Based on Mr. Bartkowski's recommendation, and after interviewing Ms. Kowalski, Mr. Nanni submitted Ms. Kowalski's name to the Board of Education for appointment to the position of temporary replacement special education teacher. In a letter dated November 13, 1992, Mr. Bartkowski notified plaintiff that the position had been filled, but that her candidacy continued for other special education teacher positions expected to become available in the future (*id.*, Ex. 22).

On January 19, 1993, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), in which she stated the following:

> I applied for a regular substitute special education teacher position at Williamsville East High School on September 8, 1992. On November 17, 1992, I was notified by letter that I did not get the position, though I was qualified. The person who did get the position was 23 years old. I am 51.
>
> I believe that I was not hired for the position because of my age ... in willful violation of the [ADEA].

(*Id.*, Ex. 23). On approximately April 2, 1993, defendant filed a response to this charge in which it claimed that the decision to hire Ms. Kowalski was the result of the district's "shared decision making process" in which the individuals who interviewed plaintiff "ranked her below the successful candidate who had actual classroom teaching experience" (*id.*, Nanni Aff., ¶ 20).

In May of 1993, a permanent (probationary) special education teaching position became vacant at Williamsville East. The vacancy was posted, and plaintiff and Ms. Bulger (the person who had withdrawn her name from consideration for the substitute teaching position) were the only two candidates considered for the job. In a memorandum dated June 8, 1993, Dr. Johannes Olsen (the principal at Williamsville East) recommended to Mr. Bartkowski that Ms. Bulger be appointed to the position (*see id.*, Ex. 24). A Superintendent's personnel report dated July 6, 1993 indicates that Ms. Bulger was appointed to the position by the Board of Education, effective September 1, 1993 (Item 18, Ex. B). According to Mr.

Nanni, upon the Board's approval of Ms. Bulger's appointment, he sent her a contract. When she did not respond, Mr. Nanni telephoned her and learned that she was no longer interested in the position (Item 18, ¶ 17). The position was reposted on August 19, 1993 (Item 9, Ex. 36), and Ms. Bulger's resignation was accepted by the Board of Education at its August 24, 1993 meeting (*id.*, Ex. 35). Plaintiff did not reapply for the position, and it was offered to and accepted by Beth Long, who was the highest ranked of the three candidates who interviewed for the position (*id.*, Exs. 37–39).

Meanwhile, in May of 1993 vacancies were also posted for two special education positions at Helm Middle School. Plaintiff was one of eight candidates who were interviewed. The positions were offered to and accepted by two candidates other than plaintiff (*see id.*, Exs. 26–31).

By letter dated July 27, 1993, Mr. Nanni offered plaintiff a regular substitute special education teaching position at Dodge Elementary School (*id.*, Ex. 32). By letter dated August 3, 1993, plaintiff declined the offer, stating:

> After serious deliberation ..., I find that such a position would not be advantageous in meeting my long term goal of attaining permanent placement in the district I have served in for so many years.
>
> I remain open to the opportunity to serve in other permanent positions and would appreciate consideration for the same.

(*Id.*, Ex. 33). By letter dated August 4, 1993, Mr. Nanni informed plaintiff that she should "respond specifically to any future postings of vacancies for which [she] would like to be considered" (*id.*, Ex. 34).

By letter dated September 3, 1993, plaintiff resigned from her position as educational aide at Williamsville East. In her letter of resignation, plaintiff stated:

> Please be advised that this in no way rescinds my application for a permanent teaching position in Special Education in the district. I wish to be considered for all permanent teaching positions, especially that position ... at East High School in

light of the fact that Dr. J. Olsen informed me in June, that I was one (1) of two (2) and only two (2) candidates vying for the position.

(*Id.*, Ex. 4).

On December 1, 1994, the EEOC issued its determination on plaintiff's charge. The determination stated as follows:

Charging Party alleged that she was discriminated against in violation of the [ADEA] in that Respondent had denied her a position as regular substitute teacher because of her age, 51, in November 1992, and in that Respondent did not hire applicants 40 years old or older for teaching positions. Charging Party subsequently alleged that Respondent violated the ADEA in that it denied her permanent teaching positions in 1993 because of her age and because she filed this charge.

The investigation included a fact finding conference and a review of documents related to the selections in question and revealed that the candidates selected to fill the 1992 and 1993 vacancies all had experience as classroom teachers while Charging Party did not. Based on this analysis, I have determined that the evidence obtained during the investigation does not establish a violation of the statute.

(*Id.*, Ex. 44).

Plaintiff filed this action on March 1, 1995 (Item 1). She alleges in her complaint that she was discriminated against on the basis of her age as a result of defendant's failure to offer her the substitute teaching position in 1992 (the "first position"), the permanent teaching position in 1993 (the "second position") and one or both of the Heim Middle School positions (the "third position"). She also alleges that defendant discriminated against her by reposting the permanent teaching position when the other candidate declined it, and by failing to offer plaintiff other unspecified positions.

Defendant moves for summary judgment on the ground that it has come forward with evidence of legitimate, nondiscriminatory reasons for selecting candidates other than plaintiff to fill each of the special education teaching positions that became vacant in 1992

and 1993. Defendant also contends that its July, 1993 offer of employment to plaintiff tolls its liability for back pay. Finally, defendant contends that plaintiff failed to exhaust her administrative remedies with respect to her claims regarding the positions filled in 1993. Each of these grounds will be discussed in turn below.

### *DISCUSSION*

#### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931

F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. AnnTaylor, Inc., supra,* 933 F.2d at 167. Stated slightly differently, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994).

In *Gallo,* the Second Circuit explicitly cautioned trial courts to use extra care when deciding whether to grant summary judgment in employment discrimination cases. This is because, usually, the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited for summary adjudication. *Id.; see also Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). As stated by the Second Circuit:

> Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.... [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.... It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute. In this case that law is the ADEA.

*Gallo, supra,* 22 F.3d at 1224.

## II. ADEA.

The ADEA makes it "unlawful for an employer ... to discharge an individual ... because of such individual's age." 29 U.S.C. § 623(a)(1); *see Johnson v. New York,* 49 F.3d 75, 78 (2d Cir.1995). Under the ADEA, an employer may not discharge an employee by reason of his age if that employee is at least 40—but less than 70—years of age. *See* 29 U.S.C. § § 623(a)(1), 631(a); *see also Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994). This prohibition does not bar the discharge of an employee in the protected age group based on factors other than age. *See* 29 U.S.C. § 623(f)(1); *Woroski, supra.*

■ The New York Human Rights Law provides similar protection. *See* N.Y. Exec. Law § 296(1)(a). Under both the ADEA and the New York Human Rights Law, the ultimate question is whether an employer discriminated against an employee on account of that person's age. *Gallo v. Prudential Residential Services, supra,* 22 F.3d at 1224.

Where a plaintiff claims denial of an employment opportunity in violation of these statutes, the three-step "burden-shifting" test of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)(Title VII), supplies the appropriate analytical framework for determining a defendant's summary judgment motion. *Sutera v. Schering Corp.,* 73 F.3d 13, 16 (2d Cir.1995); *Gallo v. Prudential Residential Services, supra.* Under this test, the plaintiff must first present a *prima facie* case of age discrimination. If the plaintiff does so, the defendant must articulate a legitimate nondiscriminatory reason for its employment decision. "The burden at this phase is one of production rather than persuasion." *Sutera v. Schering Corp., supra* (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981)). If the defendant carries this burden of production, the plaintiff must show that the defendant's articulated reason for its decision is in fact a pretext for discrimination. *Id.; McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 804, 93 S.Ct. at 1825. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

There is no material dispute in this case that plaintiff has established a *prima facie* age discrimination claim. *See, e.g., Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 204 (2d Cir.1995)(setting forth elements of *prima facie* case); *Sutera v. Schering Corp., supra* (same). Instead, the parties' arguments have focused on whether material factual issues exist with respect to the second and third steps of the *McDonnell Douglas* inquiry.

As explained by the Supreme Court in *Hicks,* in order to rebut the presumption of age discrimination created by the plaintiff's establishment of a *prima facie* case, the employer must set forth, " 'through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks, supra,* 509 U.S. at 507, 113 S.Ct. at 2747 (quoting *Burdine, supra,* 450 U.S. at 255, 101 S.Ct. at 1094; emphasis in original). If the employer meets this burden, the presumption of discrimination "drops from the case," and the plaintiff then has the "ultimate burden of persuasion" to demonstrate that the challenged employment decision was the result of intentional discrimination. *Id.; see also Cronin v. Aetna Life Ins. Co., supra,* 46 F.3d at 203.

As explained further by the Supreme Court:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of discrimination, and . . ., upon such rejection, "[n]o additional proof of discrimination is *required.*"

*Hicks, supra,* 509 U.S. at 511, 113 S.Ct. at 2749. However, *Hicks* goes on to hold that, if the employer's reason for the action it took is not rejected by the trier of fact but instead is found sufficient to rebut the presumption of discrimination raised by the plaintiff's *prima facie* showing, the plaintiff can prove that the reason was a pretext for discrimination only by showing "*both* that the reason was false, and that discrimination was the real reason." *Id.* at 511 n. 4, 515, 113 S.Ct. at 2749 n. 4, 2751.

Thus, under *Hicks,* where the record before the court establishes that the defendant had "a dispositive nondiscriminatory reason [for its employment action] as to which there is no genuine issue and which no rational trier of fact could reject . . .," *Cronin, supra,* "[i]n order to survive a motion for summary judgment, at the third step plaintiff must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's [age] was the real reason for the discharge." *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996).

At 'oral argument of defendant's summary judgment motion, plaintiff's counsel advised the court that plaintiff's complaint was directed specifically at defendant's failure to hire plaintiff for the first (1992 regular substitute teacher) and second (1993 permanent) positions. The argument therefore focused on defendant's ADEA liability under the facts pertaining to defendant's selection of teachers to fill those two positions. The discussion that follows is likewise limited to an analysis of those specific facts under the legal standards for considering summary judgment motions in ADEA cases.

### A. The First Position.

In this case, defendant asserts that Ms. Kowalski was selected for the first position because she was more qualified than plaintiff, as reflected in the initial screening of the candidates' applications (Item 9, Exs. 8 & 14), interviewers' evaluations of the credentials of each candidate (*id.,* Exs. 16 & 18), and the tabulation sheet prepared by Mr. Bartkowski (*id,* Ex. 20; Item 19, Ex. A). Plaintiff challenges the accuracy of Mr. Bartkowski's tabulations, and submits her own tabulation of the scores reflected on the ratings sheets which she claims shows that her overall rating was actually higher than Ms. Kowalski's (Item 12, Ex. 2). Plaintiff also claims that she was more experienced than

Ms. Kowalski, as evidenced by her twelve years of experience as a teacher's aide in the Williamsville school system as compared to Ms. Kowalski's six-week experience as a student teacher (*see* Item 9, Ex. 14).

According to Mr. Bartkowski's tabulation of the interviewers' scores, Ms. Kowalski was evaluated by 9 interviewers, and received an average rating of 1.67 (on a scale of 1 = excellent, 2 = above average, 3 = average, and 4 = fair to poor). Plaintiff was evaluated by 8 interviewers, and received an average rating of 1.75 (Item 9, Ex. 20). The discrepancies pointed out by plaintiff can be found in the reporting of the overall rating scores for plaintiff submitted by interviewers Beverlee Hill, Kathryn Boerner and Jeanette Murphy (*id.*, Ex. 16), and the ratings for Ms. Kowalski submitted by Hill, Murphy and April Howard (*id.*, Ex. 18). For example, on her ratings sheet for plaintiff, Ms. Hill circled both "2=Above Avg." and "3=Avg." She also printed the words "possibly resource room" under the "2" rating, and the words "for our position" under the "3" rating (Item 9, Ex. 16). Plaintiff tabulated this rating as an overall score of 2.5 (Item 12, Ex. 2), and Mr. Bartkowski tabulated it as a score of 3 (Item 9, Ex. 20). Ms. Boerner printed "1–" on her interview sheet, which plaintiff tabulated as an overall score of 1.0 and Mr. Bartkowski tabulated as a score of 1.5 (Item 9, Exs. 16, 20; Item 12, Ex. 2). Ms. Murphy circled both "1" and "2" on her sheet, which plaintiff tabulated as an overall score of 1.0 and Mr. Bartkowski tabulated as a score of 1.5 (*id.*).

On her ratings sheet for Ms. Kowalski, Ms. Howard circled both "2" and "3," which Mr. Bartkowski tabulated as a "2" and plaintiff tabulated as a "2.5" (*id.*). In addition, in her tabulation of Ms. Kowalski's scores, plaintiff did not include the scores reported by Mr. Bartkowski or by interviewer Catherine Hays (*id.; see also* Item 19, ¶ 6 and Exs. D & E).

These discrepancies in the interpretation of the respective interview scores are insufficient in and of themselves to defeat summary judgment. *See Smith v. American Express Co.,* 853 F.2d 151, 154–55 (2d Cir.1988) (plaintiff's own chart depicting promoted em-

ployee's absences, submitted as evidence of pretext, insufficient to defeat summary judgment); *see also Holt v. KMI–Continental, Inc., supra,* 95 F.3d at 130 (plaintiff's opinion about her qualifications belied by facts which indicated that employees who received promotions had more experience than plaintiff). However, considering the closeness of the scores and the inconsistency in their interpretation, this evidence lends little support to defendant's assertion that Ms. Kowalski was more qualified for the position than plaintiff was.

In addition, neither the candidates' credentials nor the individual interviewers' statements supports the conclusion that Ms. Kowalski was chosen for the position because she had more classroom teaching experience than plaintiff had. For example, plaintiff's application reflects her student teaching experience in special education at Helm Middle School, as well as her extensive experience as a teacher's aide and resource room assistant in the Williamsville schools beginning in November, 1980 (Item 9, Ex. 8). Ms. Kowalski's application reflects student teaching experience in a 6th grade resource room at the Mill Middle School and kindergarten at the Futures Academy in Buffalo (*id.*, Ex. 14).

Several of the interviewers expressed their reservations about plaintiff's lack of classroom teaching experience (*id.*, Ex. 16). However, these same reservations were expressed about Ms. Kowalski by all but one interviewer (*id.*, Ex. 18; *see also* Item 19, Exs. D & E). Furthermore, plaintiff's application reflects graduate studies in special education (*id.* Ex. 8), while Ms. Kowalski's application reflects that she had not completed her undergraduate studies at the time she applied for the position (*id.*, Ex. 14).

Based on this evidence, a triable issue of fact exists as to whether defendant has met its burden of refuting plaintiff's *prima facie* case of discrimination. Accordingly, the conflict in the parties' interpretation of the evidence "reflects a question of fact to be resolved by the factfinder after trial." *Cronin v. Aetna Life Ins. Co., supra,* 46 F.3d at 203 (citing *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 38 (2d Cir.1994)).

## B. The Second Position.

■ Defendant has submitted the employment application for Ms. Bulger, who was first offered the position that became vacant in May, 1993. Ms. Bulger's application indicates that she was an experienced teacher in the field of special education, with a Master's Degree in Exceptional Education, certification in three tenure areas, and relevant experience in the development of special education curriculum and teaching methods (*see* Item 9, Ex. 14). Ms. Bulger also received "1" ratings from the two interviewers whose evaluation forms are contained in the record (*id.*, Ex. 17). Ms. Bulger clearly appears more qualified for the second position than plaintiff.

However, in August, 1993, Ms. Bulger withdrew her name from consideration for the appointment, and defendant reposted the position as it is required to do under its collective bargaining agreement with the Williamsville Teachers' Association (*see* Item 9, Nanni Aff., ¶ 26 & Ex. 36). Defendant claims that twenty applications were reviewed, and the job was offered to Beth Long, whose qualifications as an experienced special education teacher are undisputed (*id.*, Ex. 37). Defendant further claims that it did not consider plaintiff for the position at this time because she did not reapply when the position was reposted.

With respect to this latter contention, the record clearly shows that Ms. Long's application was already on file with the district well before the August, 1993 reposting of the position (*see* Item 37). Therefore, factual issues are present as to the credibility of defendant's stated reason for not considering plaintiff for the position—*i.e.*, that defendant was required under the collective bargaining agreement to repost the position rather than offer it to the next qualified candidate. In addition, plaintiff testified at her deposition that, in June of 1993, Dr. Olsen told her that she was one of only two candidates who were being considered for the position. According to plaintiff, Dr. Olsen also told her that the district was looking for candidates to fill both the first and second vacancies "for the long term" (Item, 14, Ex. A, p. 104), implying to plaintiff that Dr. Olsen was not interested in older candidates, only younger ones.

Considering this evidence in the light most favorable to plaintiff, triable issues of fact exist as to whether defendant had a dispositive, nondiscriminatory reason for hiring Ms. Long for the second position instead of plaintiff. Although Ms. Long may be better qualified, plaintiff should be given the opportunity to at least argue to the trier of fact that she was foreclosed from consideration because of her age. Accordingly, defendant's motion for summary judgment as to the second position should also be denied.

## III. Defendant's Liability for Back Pay.

In *Ford Motor Company v. EEOC*, 458 U.S. 219, 241, 102 S.Ct. 3057, 3070, 73 L.Ed.2d 721 (1982), the Supreme Court held that an employer sued for discrimination in hiring under Title VII of the Civil Rights Act of 1964 can toll the accrual of back pay by unconditionally offering the plaintiff the job which she claims she had been denied. The holding in the *Ford Motor Company* case made it plain that the preferred means for achieving an end to employment discrimination is to place the claimant in the position previously denied, through the statutorily expressed method of "voluntary compliance" if possible. According to the Court:

> To accomplish this objective, the legal rules fashioned to implement Title VII should be designed, consistent with other Title VII policies, to encourage Title VII defendants promptly to make curative, unconditional job offers to Title VII claimants, thereby bringing defendants into "voluntary compliance" and ending discrimination far more quickly than could litigation proceeding at its often ponderous pace.

458 U.S. at 228, 102 S.Ct. at 3064. The Court also found that a policy of requiring claimants to accept an employer's unconditional offer of the same or a substantially equivalent position served the goal of making victims of discrimination whole, and was in harmony with Title VII's statutory duty contained in section 706(g) to mitigate damages. *See id.* at 230–32, 102 S.Ct. at 3064–66. Thus, the Court concluded that, "absent spe-

cial circumstances, the simple rule that the ongoing accrual of back pay liability is tolled when a Title VII claimant rejects the job [s]he originally sought comports with Title VII's policy of making discrimination victims whole." *Id.* at 238–39, 102 S.Ct. at 3069.

 The rule in *Ford Motor Company* is applicable to actions arising under the ADEA, and governs the availability of front pay as well as back pay. *Dominic v. Consolidated Edison Co. of New York, Inc.,* 822 F.2d 1249, 1258 (2d Cir.1987); *Miano v. AC & R Advertising, Inc.,* 875 F.Supp. 204, 220 (S.D.N.Y.1995). The burden of proof as to whether unconditional offers of reinstatement were made is on the defendant. *See Dominic, supra.* An unconditional offer is one in which the plaintiff is not required to give up any claims for damages, including damages for back pay that accrued before the offer was made, in Exchange for the. offer. *Thomas v. Resort Health Related Facility,* 539 F.Supp. 630, 637–38 (E.D.N.Y. 1982); *Williams v. J.C. Penney Company, Inc.,* 1991 WL 150617, at \*2 (S.D.N.Y. July 30, 1991).

 In this case, the record establishes that on July 27, 1993, Mr. Nanni offered plaintiff a regular substitute special education teaching job at the Dodge Elementary School for the 1993–94 school year, "without condition" (Item 9, Ex. 32). On August 3, 1993, plaintiff declined the offer (*id.,* Ex. 33). In a letter dated August 4, 1993, Mr. Nanni stated that, as he had explained to plaintiff by telephone prior to her declining the offer, the job "carries all of the fringe benefits of a permanent position. Often such positions lead to permanent placement in the district" (*id.,* Ex. 34).

Plaintiff claims that she declined the offer because she was still being considered for the permanent position at Williamsville East High School. There is nothing in the record to suggest that plaintiff was informed at any time that the position had been offered to the other candidate. Indeed, as discussed above, the record indicates that Ms. Bulger never signed the contract for the position and never formally accepted the offer. Plaintiff also contends that she declined the offer because

she had no relevant experience at the particular school or with the particular age group.

Based on this record, there is a triable issue of fact as to whether the substitute teaching job Mr. Nanni offered to plaintiff in July of 1993 was the same as or substantially equivalent to the permanent teaching position she sought. A jury could conclude that as of July, 1991 plaintiff had a reasonable expectation that she might still be offered the permanent teaching position at Williamsville East. Defendant has therefore failed to meet its burden of establishing that the offer of employment in July of 1993 tolls its back pay liability as a matter of law.

## IV. Exhaustion of EEOC Remedies.

 Finally, defendant seeks dismissal of plaintiff's claims with respect to all but the first position on the ground that those claims were not included in plaintiff's EEOC charge. As stated by the Second Circuit, "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Preservation and Development,* 990 F.2d 1397, 1401 (2d Cir.1993). In determining the scope of the charge a court must look "not merely to the four corners of the often inarticulately framed charge, but take into account the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' " *Gomes v. Avco Corp.,* 964 F.2d 1330, 1334 (2d Cir.1992) (quoting *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)).

In this case, the EEOC determination letter dated December 1, 1994 indicates that the EEOC investigation encompassed not only plaintiff's original claim with respect to the regular substitute teaching position that became vacant in 1992, but also her claim that defendant "denied her permanent teaching positions in 1993 because of her age and because she filed this charge" (Item 9, Ex. 44).

Accordingly, defendant has not established that the plaintiff failed to exhaust her administrative remedies with respect to the second and third positions. Summary judgment is therefore not available to defendant on the ground of failure to exhaust.

### CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion for summary judgment (**Item 9**) be denied in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al v. Canadair Ltd., et al,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may* *result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

January 14, 1997.