David A. **WINDHAUSER**, Plaintiff,

v.

**BAUSCH & LOMB, INC.**, Defendant.

No. 01–CV–6212L.

United States District Court,
W.D. New York.

Dec. 19, 2003.

Peter C. Nelson, Rochester, NY, for Plaintiff.

Raymond J. Pascucci, Bond, Schoeneck & King, Syracuse, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Plaintiff David Windhauser ("plaintiff"), a white male born on July 18, 1948, brought this action against his former employer, defendant Bausch & Lomb, Inc. ("the Company"), asserting claims based on sex and age discrimination, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 ("ADEA"), and the New York Human Rights Law, N.Y. Exec. L. § 296 *et seq.* ("NYHRL"), and for violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

Plaintiff worked for the Company for twenty-nine years, the last fifteen of which was in the Intercompany Accounts unit. Beginning in late 1998, discussions began at the Company to restructure that unit and decentralize its work. In 1999 and 2000, plaintiff applied for and was denied transfers to five other positions within the Company. On March 29, 2000, plaintiff filed charges of age and sex discrimination with the New York State Division on Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC"). On May 1, 2000, prior to a determination of those charges, plaintiff took an approved leave of absence from the Company pursuant to the FMLA. On July 19, 2000, the day plaintiff returned to work, the Company told him that it had eliminated his position while he was on leave. Plaintiff alleges that, unlike others in Intercompany Accounts, the Company did not offer him another comparable position and chose to lay him off because of age and gender discrimination, as well as in retaliation for exercising his FMLA rights and for complaining about and then filing charges of discrimination against the Company.

The Company moved for summary judgment on all of plaintiff's claims. Dkt. # 33. By Order dated November 20, 2003, the Court denied the Company's motion with respect to plaintiff's FMLA claim. The Court did grant the Company's motion with respect to plaintiff's untimely Title VII and ADEA claims based on acts that occurred before June 3, 1999. *See* Dkt. # 55. The present decision deals with the balance of the Company's motion for summary judgment.

### DISCUSSION

### I. Summary Judgment in Discrimination Cases

The general principles regarding summary judgment pursuant to Rule 56 apply to discrimination actions as well. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (reiterating "that trial courts should not 'treat

discrimination differently from other ultimate questions of fact.' "). In addition, Courts apply equally the *McDonnell Douglas* burden-shifting rules to claims of discrimination brought pursuant to Title VII, the ADEA and NYHRL. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93· S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Terry v. Ashcroft,* 336 F.3d 128 (2d Cir.2003) (applying framework to ADEA claim).

First, plaintiff must establish a *prima facie* case of discrimination by showing that: (1) plaintiff was a member of the protected class; (2) plaintiff was qualified for the job; (3) plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination or that the position was ultimately filled by an individual who is not a member of the protected class. *Farias v. Instructional Sys., Inc.,* 259 F.3d 91, 98 (2d Cir.2001).

Once the plaintiff demonstrates a *prima facie* case, the employer must "articulate a legitimate, clear, specific and non-discriminatory reason" for its adverse employment decision. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). If the employer satisfies that burden of production, " 'to defeat summary judgment ... the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational trier of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.' " *Terry,* 336 F.3d at 138 (quoting *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997)). Plaintiff may meet this burden by showing, *inter alia,* that the employer's proffered reasons for its decision were false or that discrimination was the real motivation for the Company's decision. *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097 ("a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

## II. Discrimination and Retaliation Based on the Failure to Transfer

Between March 1999 and February 2000, plaintiff applied for five different posted positions within the Company. The Company denied him the transfers each time, choosing instead either to cancel the position or to hire a female under the age of forty. As to the Inventory Manager and Senior Payroll Specialist positions, plaintiff has conceded that he cannot establish a *prima facie* case of discrimination because both positions were cancelled by the Company and never filled. *See* Transcript of Nov. 20, 2003 Oral Argument, Dkt. # 56, at 40; *see also* Dkt. # 36, Ex. B at 100, Ex. T. Therefore, claims relating to those positions must be dismissed.

■■■ As to the three other positions, discussed in turn below, I find that plaintiff has established a *prima facie* case of age and sex discrimination. First, plaintiff was a member of the protected class because he is a male over the age of forty who claims that he was discriminated against on account of his gender and age.[1]

1. Neither party addresses whether the fact that plaintiff is a man is significant for purposes of Title VII. Currently, there is a split of authority between the circuit courts regarding whether a plaintiff who is a member of a majority group must establish as an element of his *prima facie* case "background circum-stances" that his employer is "one of those unusual employers who discriminates against the majority." *Compare Mills v. Health Care Serv. Corp.,* 171 F.3d 450 (7th Cir.1999); *Harding v. Gray,* 9 F.3d 150, 152–53 (D.C.Cir. 1993); *Notari v. Denver Water Dep't,* 971 F.2d 585, 589 (10th Cir.1992); *Taken v. Oklahoma*

*See Terry,* 336 F.3d at 138. Second, the record contains evidence that plaintiff's job performance was satisfactory at the time he applied for the positions. *See* Plaintiff's performance evaluations, Dkt. # 36, Ex. K at ex. 1 (stating that plaintiff "meets expectations"). Third, plaintiff established that he was qualified for the positions for which he applied, a fact the Company does not dispute. *See* Moore Dep., Dkt. # 36, Ex. B at 98–99; Gillen Dep., Dkt. # 46, Ex. DD at 197. Lastly, plaintiff has shown that the Company filled the positions with individuals who were not members of the protected class, either because they were female or younger than plaintiff. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 (2d Cir.2000); *Farias,* 259 F.3d at 98 (discussing elements of *prima facie* case of discrimination).

Therefore, the burden shifted to the Company to articulate legitimate, nondiscriminatory reasons for hiring the other candidates instead of plaintiff. *Terry,* 336 F.3d at 138. Although the Company has

*Corp. Comm'n,* 125 F.3d 1366 (10th Cir.1997) with *Iadimarco v. Runyon,* 190 F.3d 151 (3d Cir.1999). The Second Circuit has not yet spoken directly on the issue. *Tullo v. City of Mt. Vernon,* 237 F.Supp.2d 493, 501 n. 6 (S.D.N.Y.2002). The majority of the district courts in this circuit that have addressed the question have held that no special showing of background circumstances is required. *See, e.g., Pesok v. Hebrew Union Coll.-Jewish Inst.,* 235 F.Supp.2d 281, 286 (S.D.N.Y.2002) (white plaintiff asserting race discrimination not required to show background circumstances that raised suspicion that her employer discriminated against members of the majority as part of *prima facie* case); *Tappe v. Alliance Capital Management,* 177 F.Supp.2d 176, 181–82 (S.D.N.Y.2001) (same); *Cully v. Milliman & Robertson, Inc.,* 20 F.Supp.2d 636, 640–41 (S.D.N.Y.1998) (same); *but see Olenick v. New York Tel.,* 881 F.Supp. 113, 114 (S.D.N.Y.1995) (white plaintiff required to show background circumstances as part of his *prima facie* case).

The Second Circuit on several occasions has addressed discrimination claims brought by plaintiffs who are members of the majority.

met its burden in this regard, I find that a question of fact exists regarding whether the Company's proffered reasons for not hiring plaintiff are worthy of belief, and whether the Company's decisions were based, at least in part, on age or gender discrimination.

### A. Senior Financial Analyst Position

■ Although the Court dismissed as untimely plaintiff's federal claims based on the Senior Financial Analyst position because they accrued prior to June 3, 1999, *see* p. 2, *supra,* plaintiff's NYHRL claim based on this position is timely, given NYHRL's three-year statute of limitations. Therefore, the Court must address the merits of this claim.

Plaintiff has produced evidence that the forty-year old female candidate that the Company hired, Cynthia Casilio, did not meet the posted job requirements for the position.[2] In addition, the Company did

*See, e.g., Terry,* 336 F.3d at 134 (white male plaintiff asserting discrimination); *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir.2001) (white female plaintiff asserting race discrimination). In these cases, the Court has not found the fact that the plaintiff was white or male of any particular significance, nor has it indicated that a heightened evidentiary showing was required to state a *prima facie* case. In fact, in *Terry,* the Court held that plaintiff, a white male, "was a member of a protected group within the meaning of ... Title VII ... as he was allegedly discriminated against on the basis of his race ...." *Terry,* 336 F.3d at 138. In the absence of Second Circuit case law to the contrary, and for the same well-reasoned analysis of the District Court in *Tappe,* I find that plaintiff is not required to make any special showing of background circumstances in order to state a *prima facie* case of gender discrimination because he is male.

2. Specifically, the job positing stated that a Bachelor of Sciences degree in accounting was preferred, along with four plus years of general accounting experience. *See* Posting

not follow its Job Opportunities Program policy ("JOP") when it filled the position.[3] The Company asserts that Casilio was more qualified than plaintiff because she was already performing one-half of the position's responsibilities and had an established relationship with the business unit where the job was located. Moore Dep., Dkt. # 36, Ex. B at 103; *see also* Company's response to SDHR charge, Dkt. # 36, Ex. K at 7.

In spite of the Company's proffered reasons, I find that the difference in experience level and qualifications between plaintiff and Casilio, the fact that she did not meet the posted job requirements, the fact that the Company made an exception to its JOP policy when hiring her, and the fact that the Company had an articulated policy of hiring women to fill one of every two positions,[4] is sufficient evidence from which a jury could conclude that the Company failed to hire plaintiff for an impermissible reason. In addition, the Company does not deny that it took Casilio's gender into consideration when filling the position.

The Company produced evidence that it regularly made exceptions to the JOP policy and that it only preferred (and did not

require) that a candidate have the posted education and experience in accounting. However, a jury must decide the significance of those matters in evaluating the Company's reasons for denying plaintiff the position. Suffice it to say that, when viewed in a light most favorable to the plaintiff, the evidence here is sufficient to raise an issue of fact regarding the Company's motivation. *See Stern,* 131 F.3d at 312 (when reviewing the record to determine whether a rational fact-finder could find for the non-moving party, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."); *see also Quaratino,* 71 F.3d at 64 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) ("[W]hen confronted with facts from which several differing conclusions may be drawn, the inferences drawn from such underlying facts are viewed in the light most favorable to the non-movant.").

### B. Process Professional Position

█ Regarding the Process Professional position, the Company hired thirty-seven year old Denise Spano. The Company's

---

# 99–100, Dkt. # 31, Ex. Z. However, the successful candidate did not have a Bachelor of Sciences degree in accounting, but had received a two-year degree in 1998, less than one year before she applied for the position. In addition, she had been doing accounting-related work for only three years. Plaintiff, on the other hand, met all of the requirements for the position. *See* Moore Dep., Dkt. # 36, Ex. B at 98–99; Gillen Dep., Dkt. # 46, Ex. DD at 197.

3. The Company's JOP provides that employees must have worked in their current position in the Company for at least eighteen months before applying for other internal positions. *See* JOP Policy, Dkt. # 47, Ex. N. The Senior Financial Analyst posting required that applicants meet the JOP eligibility require-

ments before applying. *See* Posting # 99–100, Dkt. # 31, Ex. Z. Plaintiff met this eligibility requirement. However, the successful candidate did not, as she had been in her position for less than eighteen months at the time she applied.

4. There is evidence in the record that the Company had a gender-based affirmative action program. Plaintiff points to a June 1998 letter from the Company's CEO, Bill Carpenter, to all employees regarding, *inter alia,* the Company's business performance and career planning and development. In this letter, Carpenter states that the Company has "refreshed [it's] commitment to fill at least one of every two openings with a qualified woman or member of a minority group." Dkt. # 47, Ex. M.

articulated reasons for hiring Spano were that her previous position with the Company involved similar responsibilities, and that she had demonstrated teamwork skills which were vital to the position. Dkt. # 36, Ex. K; *see also* Ex. D at 67. Further, the Company claims that plaintiff was not hired because he needed more "general ledger" and "close" experience, he had trouble working in a team setting, and he lacked the requisite computer skills. *See* Desmann Dep., Dkt. # 36, Ex. D at 47–49; *see also* Dkt. # 47, Ex. R.

However, plaintiff has produced evidence that raises an issue of fact regarding whether these reasons are true. First, there is a dispute regarding Spano's technical qualifications for the position as compared to plaintiff.[5] Moreover, notes taken during Spano's interview call into question her ability to work as part of a team. The notes state that one interviewer thought that "recognition is very important to [her]—'Not a team player' feeling." Dkt. # 47, Ex. U. In addition, Spano lacked the same computer skills that the Company found pertinent when deciding not to hire plaintiff. Dkt. # 36, Ex. D at 70. Plaintiff also produced evidence that he had received some positive evaluations regarding his communication and teamwork skills. *See* Desmann Memo to Personnel File, Dkt. # 36, Ex. K, at ex. 1. Lastly, plaintiff claims that hiring Spano violated the Company's "fill-from-within" policy.

I find that these matters raise issues of fact that need to be resolved by a jury. Although the Company has articulated

facts that rebut the evidence of pretext offered by plaintiff, on a Rule 56 motion, the Court cannot decide whether the reasons offered by the Company for hiring Spano are unworthy of belief, whether Spano was qualified for the position, whether the Company had a "fill-from-within" policy that it did not follow here, or whether the Company considered plaintiff's gender when filling the position. Those are matters for the jury.

## C. Senior Credit Analyst Position

■ Likewise, issues of fact exist regarding whether the Company's actions vis-a-vis the Senior Credit Analyst position constituted unlawful discrimination. The Company interviewed only plaintiff and Patricia Leet, a thirty-seven year old female, for the position. The Company gave Leet the job, claiming that she was an internal employee who "was familiar with" the Vision Care group and had qualifications that the Company claims "exceeded position requirements." However, the Company does not articulate how Leet's experience exceeded the position requirements, and states only in conclusory fashion that Leet was "a seasoned professional with 12 years credit experience, with the last two years in the position of Senior Credit Analyst." Dkt. # 36, Ex. K at 9. Moreover, plaintiff has produced evidence that, at the time she applied for the position, Leet had worked for the Company for only thirteen months, not eighteen as required by the Company's JOP. *See* Notice of Leet Appt., Dkt. # 47, Ex. V. Plaintiff

---

5. For instance, Spano's resume does not indicate whether she had the requisite bachelor's degree or five years of experience. *See* Spano Resume, Dkt. # 47, Ex. S. In addition, her previous experience at the Company was as a senior sales analyst in an unrelated business unit that plaintiff claims has nothing to do with the Process Professional job, which involves Intercompany related work. Plaintiff,

on the other hand, had the requisite experience in both "general ledger" and divisional "close" processes, but was never asked about that at his interview. Plaintiff's supervisor testified that he was experienced in these areas and qualified for the position. In fact, she spoke directly to the hiring manager for the Process Professional position about plaintiff and his qualifications.

also introduced evidence that Leet's supervisor rated her "below expectations" in two of the five 'critical competency' areas of the Senior Credit Analyst position, thereby calling into question her qualifications for the position.

Based on this evidence, an issue of fact exists regarding whether the Company met its burden of producing clear and specific nondiscriminatory reasons for its decision to hire Leet, and whether those reasons are worthy of belief. *Terry*, 336 F.3d at 139. The Company's conclusory statement that Leet's qualifications exceeded the positional requirements is not evident from the record. In addition, there is a question regarding whether the Company violated its JOP policy, particularly here when the employee permitted to apply for the position with less than eighteen months of tenure was not evaluated well by her own manager.

### D. Retaliation for Complaining About Discrimination

Plaintiff also alleges that the Company did not transfer him to these positions in retaliation for his internal complaints to the Company about age and sex discrimination. I find that a question of fact exists regarding whether the Company retaliated against him in connection with the Process Professional and Senior Credit Analyst positions. Plaintiff established that beginning in June 1999, sometime after he was turned down for the Senior Financial Analyst position, he had a number of discus-

sions with his managers and the Human Resources department regarding his belief that he was being discriminated against on account of his age and gender. *See* Dkt. # 36, Ex. K at 10; Dkt. # 47, ¶ 28. Thereafter, in September 1999 and January 2000, respectively, he applied for and was denied transfers to the Process Professional and Senior Credit Analyst positions.

The same questions of fact identified above concerning the Company's proffered reasons for not transferring plaintiff to these positions likewise exist regarding his retaliation claims. A jury must decide whether a retaliatory motive played a part in the Company's decisions. *See Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993) (plaintiff may prevail on retaliation claim if the "employer is motivated by retaliatory animus, even if valid objective reasons for the [adverse employment action] exist.").[6]

### III. Discrimination and Retaliation Based on the Elimination of Plaintiff's Intercompany Accounts position and Plaintiff's Dismissal

Plaintiff also alleges that the Company discriminated against him based on his age and gender, and retaliated against him for filing discrimination charges, when it eliminated his position in July 2000 and did not offer him another job. I analyze these claims using the same *McDonnell Douglas* burden-shifting framework discussed above. *See Terry*, 336 F.3d at 141.

---

6. Plaintiff's retaliation claims based on the Company's failure to transfer him to the Inventory Manager and Senior Payroll Specialist positions are untimely because they accrued prior to June 3, 1999. *See* p. 2, *supra*. In addition, plaintiff did not establish a *prima facie* case of retaliation with respect to the Senior Financial Analyst position because he cannot show that he opposed a discriminatory practice sufficiently close in time to when he applied for this position. His reliance on complaints that he may have made to the Company sometime in early 1997 regarding his 1996 performance review is misplaced, as no reasonable jury could find that a causal connection exists between those complaints and the Company's decision a year and a half later not to transfer him to the Senior Financial Analyst position.

Plaintiff has stated a *prima facie* case of discrimination based on his termination. As discussed above, he is a member of the protected class and his job performance was satisfactory. In addition, he suffered an adverse employment action when the Company eliminated his position and then laid him off. Further, plaintiff has presented sufficient evidence (discussed below) that would permit an inference that the Company's decisions were based on discriminatory animus related to his age or gender.[7]

The Company has articulated legitimate, nondiscriminatory reasons for terminating plaintiff and for not placing him into another position. Specifically, the Company claims that it had been decentralizing the Intercompany Account functions since 1998 and that, by June of 2000, there was insufficient work for plaintiff to justify a full-time position.

To survive summary judgment, however, plaintiff does not have to show that the reorganization of Intercompany Accounts was as a whole pretextual. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir.1995) ("[a] claim that the employer has subjected the plaintiff as an individual to unlawfully discriminatory treatment does not require the plaintiff to prove that the reorganization as a whole was pretextual."). Instead, he has to show that this reason was not the only reason for the Company's decision, and that age or gender discrimination also may have been a

motivating factor. *Id.* at 203. I believe that plaintiff has done so here.

Plaintiff has submitted evidence that raises an issue of fact regarding whether the Company's reasons for eliminating his position in June 2000 were false. In addition, he has presented evidence regarding the circumstances surrounding the elimination of his position and his termination that could, if believed by a jury, raise an inference of discrimination. For instance, he has raised an issue regarding whether the report prepared by his supervisor to justify the elimination of his position was accurate. Pl. Aff., Dkt. # 47, ¶ 15.[8] Further, a reasonable jury could conclude that plaintiff was led to believe that his position was secure and not told that it had been eliminated and this lulled him into not applying for other positions. Plaintiff's supervisor told him in early June that his job was not being eliminated and this position was secure. When the Company eliminated his position a few weeks later, it purposefully chose not to tell him of the decision for three weeks. By that time, other positions for which plaintiff may have been qualified were filled by younger or female candidates. Moreover, plaintiff has presented evidence that the Company had an articulated policy of filling a certain percentage of open positions with qualified female candidates. Certainly, the employment of an affirmative action plan does not in and of itself constitute illegal discrimination. However, the existence of such a

7.  Likewise, plaintiff has stated a *prima facie* case of retaliation. *See Cosgrove*, 9 F.3d at 1039; *Terry*, 336 F.3d at 141. The evidence shows that plaintiff filed a claim of discrimination with the EEOC and SDHR on March 29, 2000, that the Company was aware of the charge and responded to it on June 9, 2000, Dkt. # 36, Ex. K, and that the Company eliminated plaintiff's position on June 29, 2000.

8.  Contrary to the arguments of the Company, plaintiff cited by specific reference to data

upon which he relied and explained the methodology he used to come up with these figures. This is in sharp contrast to the unsupported assertion made solely in the Company's Reply Memorandum of Law that the Company's records created in the regular course of business during the time period in question demonstrate a significant decrease in the number and dollar amounts of intercompany variances. Dkt. # 51, p. 12.

plan is probative evidence that the Company may have taken plaintiff's gender into account when it made employment decisions relating to him.

Plaintiff also produced evidence that younger females in the Intercompany Account group were not laid off, but obtained other jobs in the Company before their positions were eliminated.[9] From this, a jury could conclude that age or gender was a motivating factor in the Company's decision. *See Cronin* 46 F.3d at 204 ("[a] finder of fact is permitted to draw an inference of age discrimination from evidence that, in implementing such a reorganization or reduction, the employer has located new positions for younger, but not older, employees."). There is also a question of fact regarding whether the Company followed its own policies and procedures when it terminated plaintiff and made certain decisions to fill positions with other candidates when it knew that plaintiff's job had been eliminated.[10]

Moreover, the Company admits that there were discussions between Human Resources personnel and plaintiff's managers regarding whether he should be offered certain positions. However, it decided not to do so allegedly because they thought that plaintiff would turn down a lower paying position. Yet, pursuant to the Company's Redeployment policy had plaintiff taken a position in a lower 'band' he would have retained his current salary for at least six months, and perhaps for a significantly longer period. Redeployment policy, Dkt. # 36, Ex. M at 2.

The Company provides explanations and reasons for why the positions were offered to other individuals and not plaintiff, why the others in his group were not laid off, and why the Company chose not to tell plaintiff immediately that his position was terminated. The Court, however, should not make the factual determination whether these explanations are credible. Instead, whether the Company's reasons for not placing plaintiff in vacant positions and terminating him are worthy of belief must be decided by a jury. *See Cronin,* 46 F.3d at 205–206 (holding that an issue of fact exists precluding summary judgment on ADEA claim where plaintiff introduced evidence that employer terminated him without submitting his name for other positions for which he was qualified, but had done so for other younger employees); *see also Terry,* 336 F.3d at 139–40 (plaintiff raised an issue of fact regarding whether his employer's reasons for not transferring him to other positions were a pretext for discrimination); *see also Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 135 (2d Cir. 2000) ("Summary judgment is appropriate only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact.")

Likewise, plaintiff has produced sufficient evidence upon which a jury could conclude that the Company retaliated against him for filing discrimination charges against it. A causal connection between protected activity and an adverse employment action can be established directly through evidence of retaliatory animus or "indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other

9. One female coworker stated in her deposition that the Company transitioned 75% of her job responsibilities from her in January 2000. Nonetheless, she found another position in the Company in April 2000, and her job was not eliminated until June 2000. Dkt. # 36, Ex. E at 45–47.

10. For instance, the Company's Redeployment policy provides that an employee whose job is eliminated should be given as much advance notice as possible that his or her job is being eliminated. That was not done here. *See* Dkt. # 36, Ex. M.

evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000); *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991). Here, plaintiff produced evidence that he filed discrimination charges less than three months before the decision to terminate him was made. In addition, plaintiff claims that Clay Osborne, the Company's Vice President of Human Resources, told him in early 2000 that the Company would "treat him differently" if he filed a discrimination charge with the EEOC. Dkt. # 36, Ex. 92–93. Thus, summary judgment on plaintiff's retaliation claim must be denied. *Terry*, 336 F.3d at 144–45.

This is not a case in which plaintiff was passed over once for a position for which he was qualified and a younger female was hired instead. Rather, plaintiff repeatedly applied for positions for which he was passed over for younger or female candidates. In addition, plaintiff was the only employee that was laid off as a result of the Intercompany reorganization, whereas other younger, female employees (who had not filed discrimination charges) found other jobs before their Intercompany positions were eliminated. There are factual questions that the Court cannot resolve concerning the several employment decisions made concerning plaintiff. For these reasons, the remaining portion of the Company's motion for summary judgment pertaining to plaintiff's ADEA and Title VII claims is denied.

## CONCLUSION

As set forth in the Court's decision here and its previous decision and order (Dkt.# 55), the Company's motion for summary judgment (Dkt.# 33) is granted, in part, and denied, in part as follows:

As to plaintiff's **first claim**, which alleges age discrimination in violation of the ADEA and NYHRL based on the Company's denying plaintiff transfers to five positions, the Company's motion is:

**granted** as to the ADEA and NYHRL claims based on the Inventory Manager and Senior Payroll Specialist positions;

**granted** as to the ADEA claim based on the Senior Financial Analyst position;

**denied** as to the ADEA and NYHRL claims based on the Process Professional and Senior Credit Analyst positions;

**denied** as to the NYHRL claim based on the Senior Financial Analyst position.

As to plaintiff's **second claim**, which alleges sex discrimination in violation of Title VII and NYHRL based on the Company's denying plaintiff transfers to five positions, the Company's motion is:

**granted** as to the Title VII and NYHRL claims based on the Inventory Manager and Senior Payroll Specialist positions;

**granted** as to the Title VII claim based on the Senior Financial Analyst position;

**denied** as to the Title VII and NYHRL claims based on the Process Professional and Senior Credit Analyst positions;

**denied** as to the NYHRL claim based on the Senior Financial Analyst position.

As to plaintiff's **third claim**, which alleges retaliation for opposing discriminatory practices in violation of Title VII and NYHRL based on the Company's denying plaintiff transfers to five positions, the Company's motion is:

**granted** as to the retaliation claims based on the Inventory Manager, Senior Payroll Specialist, and Senior Financial Analyst positions;

**denied** as to the retaliation claims based on the Process Professional and Senior Credit Analyst positions;

As to plaintiff's **fourth claim**, which alleges retaliation in violation of Title VII

and NYHRL for filing discrimination charges with the EEOC and the SDHR by eliminating his position and failing to place him into another position, the Company's motion is **denied**.

As to plaintiff's **fifth claim**, which alleges interference with plaintiff's FMLA rights by discharging him for taking FMLA leave, the Company's motion is **denied**.

As to plaintiff's **sixth claim**, which alleges age and sex discrimination in violation of Title VII, ADEA, and NYHRL based on the elimination of his position and failure to place him into another position, the Company's motion is **denied.**

The Company's motion for summary judgment does not address the four claims plaintiff recently added in his amended complaint, filed December 9, 2003 (Dkt.# 57).

IT IS SO ORDERED.